SOVEREIGN CAMP, WOODMEN OF THE WORLD *v.* FARMER.

[77 South, 655, Division A.]

1. INSURANCE. *Mutual benefit insurance. Defenses. Misstatements in application.*
   Code 1906, section 2675, (Hemmingways, Code, section 5141), requiring a copy of the application to be delivered with any policy or certificate of insurance, and providing that in default thereof the insurer shall not be permitted in any court to deny that any of the statements in the application are true, creates not a rule of evidence but a rule of substantive law, which became a part of the contract of insurance and hence applied to a benefit certificate issued while fraternal insurers were subject to its provisions, though the section was not brought forward into, Laws, 1916, chapter 206, by which fraternal orders are now governed.

2. WITNESSES. *Privileged communications. Waiver by contract.*
   The privilege created by section 3695, Code 1906 (Hemmingways Code, section 6380), in reference to communications to physicians, is personal to the physician's patient and may be waived by him either before or at the trial, and where one of the considerations upon which a policy was issued was the waiver by the insured of such privilege, in such case his physician was a competent witness, although he obtained his knowledge of his condition while treating him professionally.

3. TRIAL. *Objections to evidence. Good in part.*
   Where in an action on a benefit certificate with which no copy of the application was delivered, defendant could not deny the truth of the statements contained in the application, but plaintiff had waived the privilege provided by Code 1906, section 3695, in regard to communications made to his physician. In such

case, the evidence of the physician must be confined to facts tending to prove the insured's state of health after his application for the certificate was made, he could not be permitted to testify as to matters accruing prior thereto.

4. SAME.
Where objection was made to all of the testimony of a witness a part of which was competent and a part incompetent, without limiting the objection to the incompetent part, the objection should have been overruled.

APPEAL from the circuit court of Panola county.

HON. E. D. DINKINS, Judge.

Suit by Mrs. Laura May Farmer against the Sovereign Camp, Woodmen of the World. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Watkins & Watkins,* for appellant.

The court committed error in refusing to admit in evidence and excluding from the jury the testimony of Dr. Battle Malone, and other doctors to the effect that the decedent, Farmer, at the time of the execution of the application in this case, and upon the date of delivery of the policy, was not in good health.

The application signed by the decedent contained the following statement: "I hereby certify, agree, and warrant that I am of sound bodily health and mind, that I am temperate in habits, and have no injury or disease that will tend to shorten my life. I hereby consent and agree that this application, consisting of two pages to each of which I have attached my signature, the examining physician's report and all provisions of the constitution and laws of the order now in force, or that may hereafter be adopted, shall constitute the basis for and form a part of any beneficiary certificate that may be isssued to me by the Soverign Camp of the Woodmen of the World, whether printed or referred to therein or not.

Said application contained the following stipulation: "I further waive for myself and beneficiaries the privileges and benefits of any and all laws which are now in force. or may hereafter be enacted in regard to disqualifying any physician from testifying in his professional capacity.

The contract sued upon was dated February 22, 1915, and contained the following memorandum, attached to and forming part thereof, signed and executed by the decedent, John Kendall Farmer.

"I have read the above certificate No. 80,343 of the Sovereign Camp of the Woodmen of the World, and the conditions therein, and hereby agree to accept the same as a member of Camp 958, State of Mississippi, this the 22nd day of February, 1915, and that all the requirements of section 58 of the constitution and laws of the order have been complied with."

Section 58 of the constitution and laws of the order, above referred to, contain the following language. "The liability of the Sovereign Camp for the payment of benefits on the death of a member shall not begin until after his application shall have been accepted by a Sovereign physician, his certificate issued, and he shall have: First—Paid all entrance fees; Second—Paid one or more advance monthly payments of assessments and dues, known as 'Sovereign Camp Fund;' also, signed his certificate and acceptance slip attached thereto; Third—Paid the physician for medical examination; Fourth—Been obligated or introduced by a camp or by an authorized deputy in due form; Fifth—Had delivered to him, in person, his beneficiary certificate while in good health."

"The foregoing are hereby made a part of the consideration for, and are conditions precedent to, the liability for the payment of benefits in case of death."

The testimony of Dr. Malone and other physicians which was excluded by the trial court would have es-

tablished, if admitted, that many years prior to the application for an issuance of the certificate of insurance sued upon in this case, the member, Mr. Farmer, became afflicted with osteomyelitis or necrosis of the bone of the left leg, which means a decaying of the bone, and that the said John Kendall Farmer died within ten-months after the issuance of the said certificate, the immediate cause of his death being poisoning following an operation on such decayed bone, which testimony, if admitted, and believed by the jury if contradicted, would have established that upon the 22nd day of February, 1915, and upon the date of the signing of the application for the benefit certificate in question, the decedent was not in good health, as he contracted that he was upon the day and date of the delivery of the policy, but that he was then suffering with decayed bone, which was the immediate cause of his death.

The testimony of such doctors was competent and relevant under the issues formed in the case, but was excluded by the trial court, for the reason that such doctors, and each of them gained the information forming the subject of the testimony while attending the decedent as a physician, and that such testimony was inadmissible because of a confidential nature.

The question is squarely presented in this case as to whether or not such privilege of disclosure could be waived by the assured in his application for insurance, which formed part of the contract in the case, and as to whether or not such stipulation is binding and valid upon the beneficiary of the assured. There will be no question that the application for insurance forms part of the contract. The contract of insurance sued upon provides that the contract shall consist of the certificate of insurance the application and the constitution and by-laws of the order. And, aside from this it is universally settled in this country that the contract of a member of a fraternal order consists of; (A) His application for membership; (B) The cer-

tificate or policy of insurance;  (C) The constitution and by-laws of the order itself.

We take it there will be no dissent about this proposition, but as a matter of convenience, we refer the court to the following authorities announcing such rule: *Sabin* v. *Phinney,* 134 N. Y. 423, 428; *Shipman* v. *Protected Home Circle,* 174 N. Y. 398, 409; *Van Schoonhoven* v. *Curley,* 86 N. Y. 187, 192; *Port Edwards, C. & N. R. Co.* v. *Arpin,* 80 Wis. 214-218; *Kirkpatrick* v. *Modern Woodmen of America,* 103 Ill. App. 468, 473; *Wallace* v. *Madden,* 168 Ill. 356, 360; *Fullenweider* v. *Royal League,* 180 Ill. 621, 625; *Baldwyn* v. *Begley,* 185 Ill. 180, 187; *Treat* v. *Merchants' Life Ass'n,* 198 Ill. 431, 435; *Supreme Lodge, Knights of Pythias* v. *Knight,* 3 L. R. A. 409, 117 Ind. 489; *Union Mutual Ass'n* v. *Montgomery,* 70 Mich. 587, 594; *Supreme Lodge K. of P.* v. *La Malta,* 30 L. R. A. 838, 839; 95 Tenn. 157; *Sabin* v. *National Union,* 90 Mich. 177, 179; *Modern Woodmen of America.* v. *Tevis,* 117 Fed. (U. S. App. 8th Cir.) 369, 370; *In Re Globe Mutual Benefit Ass'n,* 63 Hun. 263; *Gaines* v. *Supreme Council R. A.,* 140 Fed. 978, 979; *Palmer* v. *Welsh,* 132 Ill. 141; *Relf* v. *Rundle,* 103 U. S. 225, 26 L. Ed. 337; *Warner* v. *Delbridge & Cameron Co.,* 110 Mich. 590, 594.

Section 3695, of the Code of 1906 is in the following language: "All communications made to a physician or surgeon by a patient under his charge, or by one seeking professional advice, are hereby declared to be privileged, and such physician or surgeon shall not be required to disclose the same in any legal proceeding, except at the instance of the patient."

At common law, communications between physician and patient were not privileged, but were admissible in evidence.  40 Cyc. page 2381; *Trull* v. *Modern Woodmen* (Idaho), 10 A. & E. Ann. Cas. 53; *Freel* v. *Market Street Cable R. Co.,* 97 Cal. 40, 31 Pac. 730; *Matter of Fling,* 100 Cal. 394, 34 Pac. 863; *Streeter* v. *Breckenridge,* 23 Mo. App. 244; *Westover* v. *Aetna L. Ins. Co.,*

99 N. Y., 59 Am. Rep. 1, 1 N. E. R. 104; *Renihan* v. *Dennin,* 103 N. Y. 573; 57 Am. Rep. 770, 9 N. E. 320; *Westover* v. *Aetna Ins. Co., Supra; Freel* v. *Market Street Cable Co., supra; Thompson* v. *Ish,* 99 Mo. 160, 12 S. W. 510, 17 Am. St. Rep. 552, And note on page 570; *Foley* v. *Royal Arcanum,* 151 N. Y. 196, 56 Am. St. Rep. 621, 45 N. E. 456; *Coleman* v. ——, 111 N. Y. 220, 19 N. E. 71; *McKinney* v. *Grand St. etc., R. Co.,* 104 N. Y. 352, 10 N. E. 544; *Alberti* v. *New York, etc., R. Co.,* 118 N. Y. 77, 23 N. E. 35; *Rosseau* v. *Bleau,* 131 N. Y. 177, 27 Am. St. Rep. 578, 30 N. E. 52.

It has been held everywhere that the question has been passed upon, except in New York, that a stipulation by the insured waiving his statutory privilege as to communications to his physician is valid and makes the communications admissible in evidence, the stipulation is binding on both the insured and the beneficiary. *Adreveno* v. *Mutual Reserve Fund, L. Ass'n.* 34 Fed. 870 (Missouri Statute); *Metropolitan Life Ins. Co.* v. *Wills,* 37 Ind. App. 48, 76 N. E. 560; *Keller* v. *Home L. Ins. Co.,* 95 Mo. App. 627, 69 S. W. 612; *Fuller* v. *Knights of Pythias,* 129 N. C. 318, 40 So. 65. Under the waiver herein discussed, the physician becomes competent to testify to his knowledge of the disease of which the insured died, in order to show that the death was not covered by the policy, as in the case of accident insurance. *Western Travelers, Acc. Ass'n* v. *Munson,* 73 Neb. 858, 103 N. W. 688. The physician also becomes competent to testify to his knowledge of the state of health of the insured prior to the time of the application for the insurance, with a view to showing a breach of warranty in the application. *Modern Woodmen of America* v. *Angle* (Mo. App. 1907), 104 S. W. 297; *Fuller* v. *K. of P.* (N. C.), 85 A. S. R. 744; *Grand Rapids, etc., R. R. Co.* v. *Martin,* 41 Mich. 667, 3 N. W. 173; *Foley* v. *Royal Arcanum,* 78 Hun 222, 28 N. Y. S. 952; *Adreveno* v. *Mutual Reserve, etc., Ass'n,* 34 Fed. 870; *Dougherty* v. *Metropol-*

*itan Life Ins. Co.*, 87 Hun 15, 33 N. Y. S. 873; *Metropolitan Life Ins. Co., v. Wills* and *Penn. Mutual, etc., Co.* v. *Wiler,* 100 Ind. 92, 50 Am. St. Rep. 769. The identical question was presented in the case of *Keller* v. *Home Life Ins. Co.* (Mo.), 69 S. W. 612; *Modern Woodmen* v. *Angle,* 104 S. W. 297; *Metropolitan Life Ins Co.* v. *Burbaker* (Kans.), 96 Pac. 62; *In re Elliott,* 73 Kans. 151, 84 Pac. 750; *Re Burnette,* 73 Kans. 609, 85 Pac. 575; *Annuity Ass'n.* v. *McCall* (Ark.), 146 S. W. 125; *Foley* v. *Royal Arcanum,* 45 N. E. 456; *Samson* v. *Breed.* 1 Walker, 267; *Ingraham* v. *Reagan,* 23 Miss. 213; *Botanico Medical Co.* v. *Atchinson,* 41 Miss. 188.

The court below committed error in overruling the appellant's demurrer to the plaintiff's replication to appellant's second, third, and fifth, pleas.

The appellant in this case, in its second, third and fifth pleas, in great detail alleged the execution of the application for insurance by the deceased, the fact that the same was the basis for entering into the contract sued upon, and that the assured warranted the truthfullness of the statement therein contained, and that the contract of insurance was entered into by the appellant relying upon the truthfullness of such statements. Such pleas allege and aver that the statements contained in the application of the assured were untrue, false and known by the assured to be untrue in two respects: (A) That the assured was asked as to whether or not he was in good health at the time of the signature of such application. (B) The assured was asked as to whether or not he had been attended by a physician within five years from the date of such application.

That the assured had stated that he was in good health and had not been attended by a physician within five years from such date, and that such statements were false, and known by the assured to be false in that he had been treated for a serious malady, from which he was suffering upon the date of application, and which.

eventually caused his death, within ten months from the issuance of the policy sued upon in this cause.

To these three pleas, the appellee interposed certain replications based solely upon appellant's failure to comply with section 2675 of the Code of 1906 in that the appellant had not delivered to the insured with the policy certificate or contract of insurance a copy of insured's application. Demurrers were interposed by the appellant to such replication and the demurrers overruled, and the question is presented as to whether or not it was erroneous on the part of the trial court, by its ruling upon the pleadings, to deprive the appellant of the defense sought to be set up by it to the effect that the insured had made material statements in his application for insurance, which were not only false, but known to be false by the insured.

The question is presented as to whether or not, under the facts in this case, the failure of the appellant to deliver to the assured with such policy a copy of his application, as a matter of law, debarred the appellant from showing the falsity of the material statements contained in the application. No question was made in the court as to the materiality of such statements. Nor was any question made but that unless section 2675 of the Code precluded the appellant from availing itself of such defense, the facts set up in such pleas constituted a defense to the cause of action. The appellee did not challenge the sufficiency of said pleas, either by demurrer or otherwise, but admitting by implication that the pleas set up a valid defense to the declaration, by way of confession and avoidance, admitting all the material facts alleged in said plea, filed its replication thereto alleging failure of appellant to comply with section 2675, of the Code as hereinbefore set out.

In the case of *Sovereign Camp, Woodmen of the World* v. *Harper,* 73 So. 87, affirmed by this court

without written opinion, on February 13, 1917, the identical question was decided adversely to the appellant. We would not ask the court to review the question, were it not for the effect of a certain act, passed by the legislature of the state of Mississippi in the meantime.

The certificate of insurance in this case was delivered February 22, 1915, the decedent died in December, 1915. The suit was filed in August, 1916. After the death of the assured, but prior to the institution of this suit, the legislature of the state of Mississippi passed chapter 206, of the Laws of 1916, section 4 of which is in the following language:

"Exemptions. Except as herein provided, such societies shall be governed by this act, and shall be exempt from all provisions of the insurance laws of this state, not only in governmental relations with the state but for every other purpose, and no law hereinafter enacted shall apply to them, unless they be expressly designated therein."

Our contention, stated in a concrete form is that section 2675, of the Code of 1906, making it the duty of appellant to deliver to the assured with his certificate, a copy of his application established a rule of evidence, which was subject to be repealed or modified at any time, and that when this suit was instituted and tried, such rule of evidence no longer existed as to the appellant order. Chapter 206 of the Laws of 1916, is what is known as the uniform fraternal order bill, the same having been passed by a majority of the states of the Union. The purpose of section 4 was to provide that all laws affecting fraternal orders should be found in that particular chapter, the object being that a fraternal order, in looking for statutes affecting its legal rights in Mississippi, contractual and otherwise should not be obliged to consult any other statutory law than that provided in chapter 206. Now, it will be conceded

that nowhere in said chapter is it required that a fraternal order, in delivering a certificate of insurance, delivered to the insured a copy of his application. The court below held that section 2675 was not a mere rule of evidence or the provision of a remedy and could not be changed by statute as to contracts then in existence, and such is, in concrete form, the legal ˌestion presented in this case. We respectfully submit that section 2675 of the Code of 1906, did not, and was not intended by the legislature of the state of Mississippi to confer any property right upon the holder or beneficiary of an insurance certificate. It, in no manner, was intended to or did affect the contractual relations between the parties. The liability of the appellant to the appellee is fixed in the provisions of the contract. Their obligations of the parties.

In the case of *Easterling Lumber Company* v. *Pierce,* 64 So. 461, 106 Miss. 672, the question was presented as to whether or not the Act of 1912, found in chapter 215 of such laws, in reference to the *prima-facie* presumption of negligence arising from certain injuries, applied to injuries occuring prior to the passage of the act. The court held that the act was a mere rule of evidence and applied although the present action was pending at the time the act was passed.

Touching the question of the retrospective construction of statutes under the subject of statutes relating to remedy and procedure, we find in 36 Cyc., p. 1213, the following statement of law: "The presumption against the retrospective construction of a statute is founded on the principle that they should not be given such a construction as will make them unconstitutional or unjust, and, therefore, as a general rule, does not apply to statutes that relate merely to remedies and modes of procedure. In 36 Cyc., p. 1217, is the following: Rules of evidence are at all times subject to modification by the legislature and statutes, making such changes as are applicable from their passage, not only to causes of

action arising thereafter, but also to actions accrued or pending at the time. It was decided in *Carothers* v. *Hurley,* 41 Miss. 71, that: The legislature has the power to change the rules of evidence, and to adopt new rules so as to affect past and future rights of action.

"In *Belcher* v. *Mhoon,* 47 Miss. 613, it was decided that: It is competent for the legislature to enact laws in respect to testimony and to shift the burden of proof by pronouncing that, if certain facts exists, the presumption shall be that certain other things connected with them were done."

"The statute, in the case at bar, dealt only with the rule of evidence, and not with a substantive right." The court did not·err in granting the instruction. In this connection, we call the attention of the court to the fact that in the case of *Hudson* v. *Railroad Co.,* 48 So. 289, 95 Miss. 41, speaking through Mr. Justice Fletcher as the organ of the court, this court held that, under section 1985 of the Code of 1906, a declaration merely alleging injury as the result of a moving train of cars stated a cause of action without charging negligence, and, still notwithstanding such construction by the court, this court held that the statute afforded only a rule of evidence.

We respectfully submit that error was committed, as hereinbefore pointed out, and we ask that the case be reversed and remanded for a new trial.

*Shands & Montgomery,* for appellee.

Dr. Malone was not a competent witness in reference to the matters he was interrogated about at the instance of the defendant below. Such testimony is prohibited by the positive terms of section 3695, Mississippi Code of 1906, which is as follows: .

"All communications made to a physician or surgeon by a patient under his charge or by one seeking professional advice, are hereby declared to be privileged, and such physician or surgeon shall not be required to

disclose the same in any legal proceeding, except at the instance of the patient.''

In the case of *Y. & M. V. Ry. Co.* v. *Messina,* 109 Miss. 143, in construing this statute, this court speaking through Justice Cook, remarked, ''there is no more sacred relationship of confidence than the relationship of patient and physician, and it was in our opinion the purpose of the legislature to close the lips of the physician concerning any and everything he knows about the patient by oral communication or from physical examination of his patient . . . The physicians were acting in their professional capacity, and the plantiff was their patient, and all communications to their professional senses are privileged and the physician however willing he may be to violate the confidence of his patient will not be permitted to do so by the wise provisions of the statute.''

Counsel seek to avoid the effect of this statute by invoking a paragraph contained in the application for insurance in this case which is in the following language: ''I further waive for myself and beneficiaries the privileges and benefits of any and all laws which are now in force or may hereafter be enacted in regard to disqualifying any physician from testifying concerning any information obtained by him in a professional capacity.''

A number of authorities have been cited by counsel to sustain the proposition that the protection afforded a patient under statutes of this character, are personal privileges which may be waived by the patient; and under the language of the statutes under consideration, in these particular cases and the phraseology of the clauses in the different applications constituting the waivers in the cases cited we have no quarrel, but the language of the Mississippi statute is different from the language of any statutes quoted in the decisions cited in appellant's brief. It seems clear that it was the purpose of the Mississippi leg-

islature to place a more rigid seal of secrecy upon com-
munications of a patient to his physician than had been
placed upon such communications by the statutes of
any other states. *Murphy* v. *Independant Order,* 77
Miss. 830; *Grand Lodge* v. *Jones* (Miss.), 56 So. 458.

Unless the language contained in the application
clearly indicated a positive agreement upon the part of
Farmer, that physicians in whom he had reposed confi-
dence might be placed upon the stand by the insurance
company in an effort to defeat paying the policy of
insurance it was selling him, it cannot be held to con-
stitute an agreement that such physicians might be call-
ed as his witnesses by the adverse party. The statute
says that physicians so situated are not competent wit-
nesses and cannot be compelled to disclose information
received in a professional capacity, except at the in-
stance of the patient. Construing strictly the language
in the application: ''I further waive for myself and
beneficiaries the privileges and benefits of any and all
laws which are now in force or may hereafter be en-
acted in regard to disqualifying any physician from
testifying· concerning any information obtained by him
in a professional capacity,'' can it be said that it was
agreed that the insurance company might call as its
witness in a proceeding at law, his physician and re-
quire him to divulge professional secrets as to his phy-
sical condition? The alleged waiver does not so state.
It simply waives his right in regard to disqualifying
any physician from testifying concerning information
obtained in a professional capacity; but is not an agree-
ment that his physicians may be called as witnesses
against him and required to divulge professional secrets.
The language does not go to this extent, and nothing
can be added to the language by intendment. Un-
doubtedly it was the purpose of the insurance com-
pany to frame a clause in its application which would
bear the construction as contended for by the appellant
in this case; but the statutes of other states which

have been construed by the courts of last resort, and which were evidently before its legal department when this application form was drawn, were written in a different language from ours. The language of our statute was clearly intended to be more rigid and more far-reaching than the statutes of any other state had been.

This question was raised point-blank and decided adversly to the appellant in the case of *Soverign Camp Woodmen of the World* v. *Mrs, Josephine Harper,* No. 18750, on Feb. 13, 1917, and was vigoursly pressed by the fourth assignment in a suggestion of error filed by the appellant in that case. We especially refer the court to the decision in that case and insist that it is conclusive of every issue raised in the case at bar. We earnestly insist that the testimony of the physicians offered by the appellant was properly excluded by the learned trial court.

But in addition to the above, the defense sought to be interposed by the fourth special plea of the appellant, is foreclosed by section 2675, Code of 1906, which provides that all insurance companies doing business in the state of Mississippi shall deliver to the insured with the policy, certificate or contract of insurance in any form, a copy of the insured's application, and in default thereof, said insurance company shall not be permitted in any court to deny that any of the statements in said application are true. I take it to be the clear intendment of this statute, that unless the insurance company delivers to the insured a copy of his application, that it will not be permitted in any court to base any defense to any action on such policy, by virtue of any statement contained in the application. In other words, in order to make the application the basis of any defense to any suit brought on the policy, a copy thereof must be delivered to the insured. The appellant in this case failed to deliver to the insured a copy of his written application.

It is not permissible in this case, even under the guise of a different issue, to assail the good health *status* of the insured established by the failure of the insurance company to deliver a copy of his application to him. All statements in the application have, *ipso facto,* become, veritie, not merely for one issue in the case, but for any and all issues. We therefore insist that the insurance company having voluntarily elected to waive its right to question the condition of the insured's health, the excluded testimony is incompetent. This question was also presented and decided adversely to the appellant in the case of *Woodmen of the World* v. *Mrs. Josephine Harper,* No. 18750. *Sovereign Camp Woodmen of the World,* v. *Dismukes,* 38 So. 351.

We come now to discussion of point two raised by the appellant in this case, which is to the effect as to whether or not the failure of the appellant to deliver to the assured, with his policy, a copy of his application, as a matter of law debarred the appellant from showing the falsity of the statement contained in the application.

Counsel concedes that this point was decided against the appellant by this court in the case of *Sovereign Camp, Woodmen of the World* v. *Harper,* 73 So. 887; but they say since that time the legislature of the state of Mississippi by chapter 206 of the Laws of 1916, has repealed section 2675 of the Code of 1906.

This court is passing upon the validity of the statute places that construction upon the statute which will render the statute not violative of any constitutional provisions where it is possible to do so.

If chapter 206 of the Laws of 1916, is heid by this court to have repealed section 2675 of the Code of 1906, in so far as said section applied to contracts made prior to the date of enactment of chapter 206 of the Laws of 1916, this court must necessarily hold that chapter 206, is void because violative of that clause of the Federal

constitution which prohibits the passage of any statute which impairs the obligation of a contract.

The law which existed at the time and place of the making of a contract and where it is to be performed enters into and forms part of it, this embraces alike those which effect its validity, construction, discharge and enforcement. Nothing is more material to the obligation of a contract than the means of its enforcement. The ideas of validity and remedy are inseparable and both are parts of the obligation, which is guararteed by the federal constitution against impairment. *Walker* v. *Whitehead,* 21 U. S. (Law Ed.), p. 357; *Priestley* v. *Watkins,* 62 Miss. 798. See also noted *Fletcher* v. *Peck,* 3 U. S. (Law Ed.) p. 162.

I feel as though I should apologize to the court for the rather desolutory manner in which I have presented this, the appellee's case, but when I say to the court that we have given practically all our working time for the last two weeks to the government in assisting registrants in filling out their "Questionaries," I feel that my apology will be acceptable to the court; however, we make these points in this case: First; That the testimony of Dr. Battle Malone was properly excluded because it was irrelevant and did not tend to prove or disprove any issue in the case.

Second: That because of section 3695 of the Code of 1906, Dr. Malone and other physicians were precluded from disclosing any information they derived from the examination of Farmer while acting in a professional capacity.

Third: That the alleged waiver of Farmer in his application for insurance cannot be asserted against the beneficiary under this policy, because a copy of the application was not filed with the policy as required by section 2675, and therefore for all practical purposes was not a part of the contract of insurance in this case.

116 Miss.—41

Fourth: That the language in the application for insurance was not sufficiently definite and positive as to constitute a waiver of the provision of section 3695 of the Code.

Fifth: That if chapter 206 of the Laws of 1916, is held by this court to have repealed section 2675 of the Code of 1906, that the court will place no such construction on chapter 206 as will give to it retroactive effect.

SMITH, C. J., delivered the opinion of the court.

This is an action at law instituted by appellee to recover upon a beneficiary certificate issued for her benefit to her husband, John Kendall Farmer, now deceased. In the application made by Farmer for the certificate he certified, agreed, and warranted that he was "of sound bodily health and mind," and in answer to the question, "Have you consulted or been attended by a physician for any disease or injury during the past five years?" he answered, "No." The beneficiary certificate afterwards delivered to him contained the following stipulation:

"This certificate is issued and accepted subject to all of the conditions on the back hereof, and this certificate, together with the articles of incorporation, constitution, and laws of the Sovereign Camp, Woodmen of the World, and the application for membership and medical examination of the member herein named, and all amendments to each thereof, shall constitute the agreement between the society and the member."

One of the conditions on the back thereof was that:

"If any of the statements or declarations in the application for membership, and upon the faith of which this certificate was issued, shall be found in any respect untrue, the certificate shall be null and void, and of no effect, and all moneys which shall have been paid, and all rights and benefits which have accrued on

account of this certificate shall be absolutely forfeited.''

Attached to the policy was an acceptance thereof signed by Farmer reading as follows:

''I have read the above certificate, No. 80343, of the Sovereign Camp, of the Woodmen of the World and the conditions thereon, and hereby agree to and accept the same as a member of Camp 958, state of Mississippi, this 22d day of February, 1915, and warrant that I am in good health at this time, and that all the requirements of section 58 of the constitution and laws of the order have been complied with.''

Appellant pleaded the general issue, and by its second, third, and fifth pleas set forth an alleged breach of the warranty of good health contained in the application for the certificate, and by the fourth an alleged breach of the same warranty contained in the written acceptance by Farmer of the certificate attached thereto. To the second, third, and fifth of these pleas appellee filed replications setting forth that she should not be barred of her action because of the matters and things set up therein, for the reason that a copy of the application had not been attached to the certificate and delivered with it to Farmer, which replications were demurred to by appellant. This demurrer was overruled, and, issue having been joined upon appellant's fourth plea, the cause proceeded to trial on the merits. At the close of the evidence peremptory instruction was granted at the request of appellee and there was judgment accordingly.

Appellee offered to prove by Dr. Malone that he had treated Farmer some time before his death for a disease of which he seems afterwards to have died, and that he also treated him at the time of his death some months after the issuance of the certificate. This evidence on motion of appellee was excluded on the ground that Dr. Malone was incompetent to testify because of section 3695, Code of 1906 (Hemingway's

Code, section 6380). Counsel for appellent then stated
to the court that he had several witnesses present by
whom he could prove that Farmer was not in good
health "at the time of his receipt of the certificate sued
on," but that they were physicians and had obtained
their knowledge from Farmer while treating him pro-
fessionally. The introduction of these witnesses was
objected to by counsel for appellee and the objec-
tion sustained. The application made by Farmer for the
issuance of the certificate contained the following stipula-
tion:

"I further waive for myself and beneficiaries the
privileges and benefits of any and all laws which are now
in force or may hereafter be enacted in regard to dis-
qualifying any physician from testifying concerning any
information obtained by him in a professional capacity."

This certificate was delivered to Farmer on the 22d day
of February, 1915, at which time fraternal orders came
within the provisions of section 2675, Code of 1906 (Hem-
ingway's Code, section 5141), requiring the delivery "to
the insured with the policy, certificate, or contract of
insurance in any form a copy of the insured's applica-
tion," and providing that "in default thereof said life
insurance company shall not be permitted in any court
of this state to deny that any of the statements in said
application are true," but prior to the trial in the court
below chapter 206, Laws of 1916, had been enacted. by
which only are fraternal orders now governed, and which
contains no provision requiring a delivery to the insured
of a copy of the application on which the policy was
issued.

The errors assigned and argued are: First, that the
court erred in overruling the demurrer to appellee's
replications to appellant's second, third, and fifth pleas;
and, second, that the court erred in excluding the testi-
mony of the physicians.

The ground upon which it is claimed that the demurrer should have been overruled is that section 2675 of the Code of 1906 (Hemingway's Code, section 5141), creates only a rule of evidence which was repealed by not being brought forward into chapter 206, Laws of 1916. This section of the Code creates not a rule of evidence, but a rule of substantive law, for it deals not with the method of proving a fact, but with the substantive rights of both the insurer and insured under a policy which has been delivered to the insured without a copy of the application therefor attached thereto, and its provisions became a part of the contract here entered into to the same extent as if appellant had expressly agreed in its certificate not "to deny that any of the statements in said application are true." The demurrer therefore was properly overruled.

The privilege created by section 3695, Code of 1906 (Hemingway's Code, section 6380), is personal to the physician's patient, and may be waived by him either before or at the trial, and, since one of the considerations upon which this policy was issued was the waiver by Farmer of such privilege, it follows that his physicians were competent witnesses, although they obtained their knowledge of his condition while treating him professionally. *Trull* v. *Modern Woodmen,* 12 Idaho, 318, 85 Pac. 1081, 10 Ann. Cas. 53; *Fuller* v. *K. of P.* 129 N. C. 318, 40 S. E. 65, 85 Am. St. Rep. 744; *Adreveno* v. *Mutual Reserve Ass'n* (C. C.), 34 Fed. 870; *Keller* v. *Home Life Ins. Co.,* 95 Mo. App. 627, 69 S. W. 612; *Modern Woodmen* v. *Angle,* 127 Mo. App. 94, 104 S. W. 297; *National Annuity Ass'n* v. *McCall,* 103 Ark. 201, 146 S. W. 125, 48 L. R. A. (N. S.) 418; *Metropolitan Life Ins. Co.* v. *Willis,* 37 Ind. App. 48, 76 N. E. 560; *Bryant* v. *Modern Woodmen,* 86 Neb. 372, 125 N. W. 621, 27 L. R. A. (N. S.) 326.

This evidence, however, must be confined to facts tending to prove Farmer's state of health after his appli-

cation for the certificate was made, for, as herebefore set forth, appellee cannot now deny the truth of the statements contained in the application, and because of the statute hereinbefore referred to the case in all respects must be tried upon the theory that Farmer was in good health when the application was made. The testimony of the physicians, therefore, was competent in so far as it dealt with matters occurring after the making of the application, but not in so far as it dealt with matters occurring prior thereto, and, since the objections to this testimony were not limited to the incompetent portions thereof, they should have been overruled.

*Reversed and remanded.*